1

2

3

4

5

6                           UNITED STATES DISTRICT COURT

7                                DISTRICT OF NEVADA

8                                      * * *

CHARLEN SMITH,                        )
9                                     )
             Petitioner,              )          2:09-cv-01892-GMN-RJJ
10                                    )
                                      )              **AMENDED**
11                                    )      REPORT &  RECOMMENDATION
vs.                                   )          OF UNITED STATES
12                                    )         MAGISTRATE JUDGE
                                      )      (Petition for Judicial Review (#1))
13   UNITED STATES DEPARTMENT OF      )
     LABOR,                           )
14                                    )
             Respondent.              )
15   _____)

16           This matter came before the Court on Petitioner Charlen Smith's Motion for Judicial

17   Review of Final Agency Decision (#1). The Court has reviewed Petitioner's Opening Brief (#17),

     Respondent's Response (#18), and Petitioner's Reply (#20), as well as the administrative record
18
     (#10).
19
                                        **BACKGROUND**
20
             Petitioner Charlen Smith seeks judicial review of a  final decision of the Department of
21
     Labor denying her claim for survivor benefits under Parts B and E of the Energy Employees
22
     Occupational Illness Compensation Program Act of 2000, 42 U.S.C. §§ 7384-7385s-15. On April
23
     27, 2005, Smith filed a claim as the surviving spouse of Floyd Smith, alleging that her husband's
24
     metastatic lung cancer and prostate cancer resulted from his work at the Nevada Test Site, a
25
     Department of Energy facility.
26
     **A.       Administration of the Energy Employees Occupational Illness Compensation**
27
               **Program Act of 2000**
28
               The Energy Employees Occupational Illness Compensation Program Act of 2000

establishes a federal compensation program to " provide for timely, uniform, and adequate

compensation of covered employees and, where applicable, survivors of such employees,

suffering from illnesses incurred by such employees in the performance of duty for the

Department of Energy and certain of its contractors and subcontractors."  42 U.S.C. § 7384d.

Part B of the Act provides lump sum benefits up to $150,000, as well as related medical

expenses, to workers who contracted certain diseases (e.g. cancer) as a result of exposure to

radiation and other toxic substances while working for Department of Energy, its contractors, or

subcontractors.  42 U.S.C. § 7384, 7384d.  Part E of the Act provides compensation to covered

employees based on the level of impairment and/or wage loss if they develop an occupational

illness as a result of exposure to toxic substances at a Department of Energy facility.  42 U.S.C. §

7385s-2.  Survivors of deceased workers may also be eligible to receive compensation. 42 U.S.C.

§ 7385s-1.

       1.      <u>Claims under Part B</u>

      For claims of cancer caused by exposure to radiation during employment at a Department

of Energy facility an individual must file a claim with the Department of Labor's Office of

Workers' Compensation Programs.  The individual may qualify for compensation under Part B

of the Act by demonstrating that his or her cancer is "at least as likely as not" caused by exposure

to hazardous materials while working on federal nuclear activities.  An individual or survivor's

claim with the Department of Labor's Office of Workers' Compensation Programs will be

forwarded to the National Institute for Occupational Safety and Health for a reconstruction or

estimation of the amount of radiation exposure during employment.  See 20 C.F.R. §§ 30.100,

30.101, 30.115, 30.210.  The dose reconstruction takes into account a number of factors,

including duration of employment.  Subject to any additional information provided by the

claimant and revision of the report following the closing interview, the claimant is required to

return a signed statement to National Institue for Occupational Safety and Health certifying that

he or she has no further information to provide and that the record for dose reconstruction should

be closed. 42 C.F.R. § 82.10(m).

      Causation of the cancer is statutorily presumed if the claimant qualifies as a member of

1    the Special Exposure Cohort as defined under the Act. 42 U.S.C. § 7384*l*(14).  The President

2    may designate new classes of workers for addition to the Special Exposure Cohort with the

3    assistance of the Advisory Board on Radiation and Worker Health.  42 U.S.C. §§ 7384o, 7384q.

4    If a claimant falls within the Special Exposure Cohort and has a specified cancer, a recommended

5    decision awarding benefits will issue without requiring any further development of the claim.  In

6    2006, a new class of workers was added to the Special Exposure Cohort.  This class is comprised

7    of Department of Energy employees, or Department of Energy contractor or subcontractor

8    employees, who worked at the Nevada Test Site from January 27, 1951, through December 31,

9    1962 for at least 250 days.  Petitioner Smith claims that her husband would fall into this category.

10   In filing her initial claim, Smith indicated that her husband had been employed by Reynolds

11   Electric and Engineering Company (REECo), a Department of Energy contractor, at the Nevada

12   Test Site for an unspecified time period.  (AR 581).

13          2.      Claims under Part E

14          Under Part E of the Act, an employee of a Department of Energy facility including a

15   worker employed by a Department of Energy contractor or subcontractor is eligible for

16   compensation if he develops a "covered illness" as a result of work-related exposure to a toxic

17   substance.  42 U.S.C. §§ 7385s-1, 7385s-2.  The Act defines the term "covered illness" to mean

18   "an illness or death resulting from exposure to a toxic substance."  42 U.S.C. § 7385s(2). A

19   "toxic substance" is "any material that has the potential to cause illness or death because of its

20   radioactive, chemical, or biological nature." 20 C.F.R. § 30.5(ii).

21          A claimant must show by a preponderance of the evidence that: (1) he was a Department

22   of Energy contractor or subcontractor employee; (2) he contracted a covered illness; and (3) he

23   contracted the covered illness through exposure to a toxic substance at a Department of Energy

24   facility.  20 C.F.R. §§ 30.5, 30.110, 30.111.  A claimant will be determined to have contracted a

25   covered illness through exposure to a toxic substance at a Department of Energy facility if: "(A)

26   it is at least as likely as not that exposure to a toxic substance at a Department of Energy facility

27   was a significant factor in aggravating, contributing to, or causing the illness; and (B) it is at least

28   as likely as not that the exposure to such toxic substance was related to employment at a

1   Department of Energy facility." See 42 U.S.C. § 7385s-4(c)(1).

2          The district Department of Labor's Office of Workers' Compensation Programs office is

3   charged with making an initial determination whether the claimant is entitled to benefits.  20

4   C.F.R. § 30.300.  The Department of Labor's Office of Workers' Compensation Programs then

5   forwards its recommendation to the Final Adjudication Branch at which point the claimant is

6   given an opportunity to file an objection to the Department of Labor's Office of Workers'

7   Compensation Programs recommendation.  20 C.F.R. § 30.300.  If a claimant objects, he may

8   request a hearing or may request review of the recommendation on the written record.  20 C.F.R.

9   §§ 30.310, 30.312. In either case, the Final Adjudication Branch will allow the claimant to

10  submit additional evidence supporting his claim before issuing its final decision. 20 C.F.R. §§

11  30.313, 30.314, 30.316.  Claimants are given an additional opportunity to request reconsideration

12  of the Final Adjudication Branch's final decision.  20 C.F.R. § 30.319.  Claimants must make the

13  request in writing within thirty days of the date of decision, and are not entitled to a hearing.  20

14  C.F.R. § 30.319.  If the Final Adjudication Branch determines on reconsideration that additional

15  factual development is necessary, the Final Adjudication Branch may return the claim to the

16  Department of Labor's Office of Workers' Compensation Programs district office for further

17  evaluation.  20 C.F.R. §§ 30.317, 30.319.

18  **B.    Facts**

19         On April 27, 2005, Smith filed a claim as the surviving spouse of Floyd Smith, alleging

20  that her husband's metastatic lung cancer and prostate cancer resulted from his work at the

21  Nevada Test Site, a Department of Energy facility.  Petitioner Smith claims that her husband is a

22  member of the Special Exposure Cohort, indicating on the employment history form submitted

23  with her claim that Floyd Smith had been employed by REECo, a Department of Energy

24  contractor, at the Nevada Test Site for an unspecified time period.  (AR 581).  Department of

25  Labor's Office of Workers' Compensation Programs requested verification of Floyd Smith's

26  employment from Department of Energy, which verified that he was employed at the Nevada

27  Test Site by REECo from January 10, 1955 to March 14, 1955, and by Ute, a Department of

28  Energy subcontractor, for one day on July 11, 1967.  (AR 566-568).  Petitioner Smith contacted

1  Department of Labor's Office of Workers' Compensation Programs, stating that she disagreed

2  with the verified employment history and that she had a friend "who knew for a fact" that Floyd

3  Smith worked at Nevada Test Site from 1955 to 1959.  (AR 534).  Petitioner Smith later

4  provided evidence from her friend,  Myrtle Green, concerning Floyd Smith's employment

5  history.[1]

6          On September 12, 2007, Department of Labor's Office of Workers' Compensation

7  Programs received National Institute for Occupational Safety and Health's final dose

8  reconstruction report completed on July 18, 2007, and a signed affirmation by Smith that she had

9  no further information that had not already been provided to National Institute for Occupational

10  Safety and Health. (AR 151-169).  Based upon the dose estimates provided by National Institute

11  for Occupational Safety and Health in its dose reconstruction report, Department of Labor's

12  Office of Workers' Compensation Programs calculated a 34.90% probability of causation.  (AR

13  139-150).

14          On September 24, 2008, Department of Labor's Office of Workers' Compensation

15  Programs issued a notice of recommended decision in which it recommended the denial of

16  Smith's claim under Part B and Part E. (AR 84-91).  The recommended decision found that,

17  because the probability of causation calculation was less than 50%, Floyd Smith's lung and

18  prostate cancers did not meet the "at least as likely as not" threshold.  As a result, Petitioner

19  Smith was not entitled to compensation as Floyd Smith's survivor under 42 U.S.C. §§

20  7384s(a)(1) and 7384n(b).

21          On October 14, 2008, Final Adjudication Branch received a letter from Smith objecting

22  to the recommended decision and requesting a hearing.  (AR 79-81).  A hearing was held on

23  January 14, 2009, at which both Petitioner Smith and Ms. Green testified. (AR 47-63).  Smith

24

25          [1]  The evidence supplied by Green, a long time acquaintance of Floyd Smith, is as follows:  In her first affidavit, Green indicated that Floyd Smith had worked with her brother, now deceased, at "Mecury
26  Area 51" from September 1955 to July 1960, and that Floyd Smith "worked holes and pipes." (AR 524). In her Special Exposure Cohortond affidavit, Green stated that Floyd Smith worked for REECo in Las Vegas,
27  Nevada from 1959 to 1967. (AR 215-18).  During an oral hearing on January 14, 2009,  Green  testified that Floyd Smith "was working at Mercury. . .in '63," and "maybe in '64." (AR 56).  She testified further that
28  he worked "up there in '50, way before I came here.  Him and my brother was there in every - I think '51." (AR 57).

1  was subsequently provided with a transcript of the hearing and given 30 days from the date of the

2  hearing to submit any additional evidence or argument. (AR 46).

3       On April 10, 2009, Final Adjudication Branch issued a final decision denying Smith's

4  claim under Part B and Part E. (AR 32-40).  By letter dated April 24, 2009, counsel for Smith

5  requested reconsideration. (AR 28-30).  On June 12, 2009, Final Adjudication Branch issued an

6  order granting Smith's request for reconsideration of its April 10, 2009, final decision, finding, in

7  part, that the decision had not adequately addressed Smith's objections to Department of Labor's

8  Office of Workers' Compensation Programs's findings regarding Floyd Smith's dates of

9  employment at the Nevada Test Site. (AR 25-26).

10       On July 27, 2009, Final Adjudication Branch issued a new Final Decision Following a

11  Hearing in which it denied Smith's claim under Parts B and E and specifically addressed

12  Petitioner Smith's objections from the January 14, 2009 hearing (AR 3-12).  Petitioner Smith

13  filed this petition for judicial review on September 28, 2009.

14                                           **DISCUSSION**

15       Petitioner Smith argues that the proper standard of review of the final agency decision in

16  this case is *de novo*.  The Respondent argues that the court has jurisdiction to review DOL's final

17  decision denying Smith's claim under Part B only and that under the Administrative Procedure

18  Act 5 U.S.C. §§ 701-706, the correct standard of review is the"arbitrary or capricious" standard.

19  As for the denial of Smith's claim under Part E, the Respondent argues that the court lacks

20  jurisdiction to review it because Smith failed to file her petition within the time period set forth

21  in 42 U.S.C. § 7385s-6(a).  § 7385s-6(a) states that a "person adversely affected or aggrieved by

22  a final decision" may file a petition for judicial review "within 60 days after the date on which

23  that final decision was issued."  While Smith acknowledges that her petition was not filed within

24  60 days of the final decision, she argues that the deadline should be tolled in her favor because

25  the final decision was not served on her attorney.

26  **A.    Standard of Review for Decisions under Part B**

27       The Administrative Procedures Act sets forth standards governing judicial review of

28  decisions made by federal administrative agencies.  *Mountain Rhythm Res. v. FERC*, 302 F.3d

958, 963 (9th Cir. 2002).  § 706(2)(A) of the Administrative Procedure Act provides that a reviewing court may set aside agency decisions found to be "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).  The standard allows for a very narrow review. The reviewing court may not substitute its own judgment for that of the agency. *U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 6-7 (2001); *Arrington v. Daniels*, 516 F.3d 1106, 1112 (9th Cir.2008).  However, the agency must have articulated a rational connection between the facts found and the conclusions made. *Kern County Farm Bureau v. Allen*, 450 F.3d 1072, 1076 (9th Cir.2006) (internal quotations and citations omitted).

Under this standard the court may only reverse if the agency "relied on factors that Congress did not intend for it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Jordan v. U.S. Dept. of Labor*, 2008 WL 4181377 (E.D. Wash. 2008) (applying the arbitrary and capricious standard to the DOL's denial of a petitioner's claim under Part B of the Energy Employees Occupational Illness Compensation Program Act of 2000).

**B.     Employment History**

Petitioner Smith's claim under Part B of the Act was denied for two reasons.  First, it could not be determined that Floyd Smith's cancer was "at least as likely as not" caused by exposure to hazardous materials while working on federal nuclear activities. Second, Floyd Smith was not deemed to be a member of the Special Exposure Cohort, whereby causation would have been statutorily presumed.  An important element of both of these inquiries relies on the duration of Floyd Smith's work history with the Department of Energy.

The Department of Labor's Office of Workers' Compensation Programs determined that Floyd Smith had been employed at the Nevada Test Site by REECo, a Department of Energy contractor, from January 10, 1955 to March 14, 1955, and by Ute, a Department of Energy subcontractor, for one day on July 11, 1967.  (AR 566-568).  Petitioner Smith argues that Department of Labor's Office of Workers' Compensation Programs's finding of covered

1  employment was based only upon records from the Social Security Administration and that those

2  records were incomplete. Petitioner Floyd Smith claims he actually worked at the Nevada Test

3  Site for a number of years in the 1950s and 1960s.  Smith argues that rejecting the evidence

4  supplied by Ms. Green regarding Floyd Smith's work history was contrary to the Federal

5  Regulations governing the implementation of the Energy Employees Occupational Illness

6  Compensation Program Act of 2000.

7  　　　　Generally, "the claimant bears the burden of proving by a preponderance of the evidence

8  the existence of each and every criterion necessary to establish eligibility. . . ."  20 C.F.R. §

9  30.111(a).  Petitioner Smith erroneously asserts that "[i]n a situation where non-self serving

10  testimony goes up against an absence of record from an agency, the claimant's testimony is to be

11  accepted under agency evidentiary rules."  Opening Brief, pg. 9:1-3 (#17) (citing 20 C.F.R. §§

12  30.111 et seq.).  The Respondent correctly points out the Petitioner's misreading of the

13  regulations as follows:

14  　　　　Although Smith cites 20 C.F.R. § 30.112 for this assertion, that provision states only that
15  "[i]f the only evidence of covered employment is a self-serving affidavit and Department
of Energy or another entity either disagrees with the assertion of covered employment or
cannot concur or disagree with the assertion. . ., then Department of Labor's Office of
16  Workers' Compensation Programs may reject the claim based upon a lack of evidence of
covered employment."  20 C.F.R. § 30.112(b)(3).  It does not logically follow from 20
17  C.F.R. § 30.112(b)(3) that the Department of Labor's Office of Workers' Compensation
Programs must accept a claim if the only evidence of covered employment is a
18  non-self-serving affidavit.  DOL's regulations instead make clear that, while affidavits
will be accepted as evidence of employment history, it is entirely within Department of
19  Labor's Office of Workers' Compensation Programs's discretion whether or not to rely
on submitted affidavits --whether self-serving or not-- in adjudicating a claim for benefits.
20

21  Response, pg. 17:3-12 (#18) (citing 20 C.F.R. § 30.111(c)).

22  　　　　The evidence regarding Floyd Smith's employment history proffered by Ms. Green is

23  anecdotal and contradictory at best.  At one point Ms. Green stated that Floyd Smith worked for

24  Department of Energy contractors from September 1955 to July 1960.  Later, the purported dates

25  of employment changed to 1959 to 1967.  (AR 215-18).  Still later, Ms. Green orally testified that

26  Floyd Smith worked for the Department of Energy "in '63," and "maybe in '64," and that he had

27  also worked "in '50" and possibly "in '51."  Ms. Green's assertions could not be confirmed or

28  supported by any other evidence.  It does not appear that the DOL completely disregarded Ms.

Green's evidence.  Rather, the DOL weighed all the evidence and found Ms. Green's affidavits and testimony uncompelling.[2]  The DOL's decision to deny Petitioner Smith's claim under Part B of the Act was neither arbitrary nor capricious and will not be overturned by this court.

**C.    Court's Lack of Jurisdiction to Review DOL's Denial of Benefits to Smith Under Part E of Energy Employees Occupational Illness Compensation Program Act of 2000.**

Energy Employees Occupational Illness Compensation Program Act of 2000 allows for judicial review of final DOL decisions under Part E as follows:

> A person adversely affected by a final decision of the Secretary under [Part E] may review that order in the United States district court . . .by filing in such court within 60 days after the date on which that final decision was issued a written petition praying that such decision be modified or set aside. . . . Upon such filing, the court shall have jurisdiction over the proceeding and shall have the power to affirm, modify, or set aside, in whole or in part, such decision. . . .

42 U.S.C. § 7385s-6(a).  The final decision denying Smith's claim under Part B and E of the Act was issued on July 27, 2009.  In order for Smith's petition for review of the final Part E denial to be timely under 42 U.S.C. § 7385s-6(a) it needed to be filed by September 25, 2009.  Smith's petition was filed on September 28, 2009.  Smith argues that Final Adjudication Branch's July 27, 2009 final decision was not served on her attorney.  DOL's regulations provide that "[a] copy of the final decision of the Final Adjudication Branch will be mailed to the claimant's last known address and to the claimant's designated representative before Department of Labor's Office of Workers' Compensation Programs, if any. *Notification to either the claimant or the representative will be considered notification to both parties.*" 20 C.F.R. § 30.316(e) (emphasis added).  Smith does not allege that she did not receive the July 29, 2009 final decision.  Thus, the allegation that her attorney did not receive a copy bears no significance.  Therefore, the Court lacks jurisdiction to review the denial of Smith's Part E claim.  See *Bowles v. Russell*, 551 U.S. 205 (2007) (statutory deadline for filing notice of appeal is jurisdictional and cannot be equitably tolled).

---

[2]  The final DOL decision denying Petitioner Smith's claims explained that, "[s]tatemeNevada Test Site provided by way of an affidavit should be considered in light of other evidence submitted in support of a claim. The Department of Energy and CPWR were only able to verify approximately two months of employment in 1955 and one day in 1967."  (AR 8-9).

1    Though denying Petitioner Smith the opportunity for judicial review may seem harsh,

2  Petitioner Smith's failure to timely file her petition defeats jurisdiction in this matter and the

3  court "may not apply equitable doctrines in circumvention of this express Congressional

4  limitation on [the court's] jurisdiction."  See *Barrie v. U.S. Dept. of Labor*, 2011 WL 3625076

5  (D. Colo. 2011) (holding that the Energy Employees Occupational Illness Compensation

6  Program Act of 2000's 60 day limitations period for seeking judicial review of final DOL

7  decision was jurisdictional and did not allow for equitable tolling).

8                                   **RECOMMENDATION**

9    Based on the foregoing and good cause appearing therefore,

10    IT IS THE RECOMMENDATION of the undersigned Magistrate Judge that the

11  Petitioner's Petition for Judicial Review (#1) be **DENIED**.

12                                        **NOTICE**

13    Pursuant to Local Rule IB 3-2 **any objection to this Report and Recommendation**

14  **must be in writing and filed with the Clerk of the Court on or before September 21, 2010 .**

15  The Supreme Court has held that the courts of appeal may determine that an appeal has been

16  waived due to the failure to file objections within the specified time.  *Thomas v. Arn*, 474 U.S.

17  140, 142 (1985).  This circuit has also held that (1) failure to file objections within the specified

18  time and (2) failure to properly address and brief the objectionable issues waives the right to

19  appeal the District Court's order and/or appeal factual issues from the order of the District Court.

20  *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708

21  F.2d 452, 454 (9th Cir. 1983).

22    DATED this   26th   day of October, 2012.

23

24                              _____
                                ROBERT J. JOHNSTON
25                              United States Magistrate Judge

26

27

28